UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Civil No. 19-11121-JGD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LETTER FROM ALEXANDER | ) | |
| HAMILTON TO THE MARQUIS DE | ) | |
| LAFAYETTE DATED JULY 21, 1780 | ) | |
| | ) | |
| Defendant. | ) | |

**CROSS-MOTION TO DISMISS PLAINTIFF UNITED STATES OF AMERICA'S
VERIFIED COMPLAINT FOR FORFEITURE *IN REM*, DATED MAY 15, 2019, AND IN
OPPOSITION TO PLAINTIFF UNITED STATES OF AMERICA'S MOTION TO
STRIKE THE CLAIM OF CLAIMANT ALDRICH L. BOSS AS PERSONAL
<u>REPRESENTATIVE OF THE ESTATE OF STEWART R. CRANE</u>**

Claimant Aldrich L. Boss ("Boss"), in his capacity as Personal Representative for the

Estate of Stewart R. Crane ("Claimant" or the "Estate"), by its attorneys, Fox Rothschild LLP,

submits this memorandum of law in opposition to plaintiff United States of America's

("Plaintiff") Motion to Strike and in support of its Cross-Motion to Dismiss Plaintiff's Verified

Complaint for Forfeiture *In Rem*, dated May 15, 2019 ("Verified Complaint"), in that, pursuant

to 18 U.S.C. § 983(d), Claimant is an innocent owner of the aforesaid property described in the

Verified Complaint, and the Verified Complaint is barred by the equitable doctrine of laches.

## I. <u>INTRODUCTION</u>

To cover-up the incompetent management of the Commonwealth of Massachusetts

Archives ("Archives"), Plaintiff seeks to unlawfully seize the letter from Alexander Hamilton to

the Marquis De Lafayette dated July 21, 1780 ("Hamilton Letter") owned by Claimant's family

for generations. Claimant specifically denies that the Archives has any rights to the Hamilton

Letter, and the Plaintiff has produced no proofs—other than the unsubstantiated argument of

counsel—that the Hamilton Letter belongs to the Archives. Claimant has solid proof that it purchased the Hamilton Letter through an arms-length transaction and has enjoyed quiet possession of this letter for over 70 years. To say the least, there is no factual dispute in that Plaintiff's Verified Complaint should be dismissed because it has produced no actual proof to support its arguments.

The Hamilton Letter has uncontrovertibly been in the possession of the family of Stewart R. Crane ("Stewart") for over 70 years after Raymond E. Crane ("R.E."), Stewart's grandfather, purchased the Hamilton Letter from a reputable and well-regarded antiquities dealer in Syracuse, New York, along with numerous other historical documents and artifacts in about 1945. In response, Plaintiff invents a "theft" where there is no evidence to sustain it in that allegedly an Archives' staff member removed the document and it was discovered in the 1950s – several years after R.E. purchased it. However, the Plaintiff and Archives do not know when that alleged event actually occurred; never once reported the alleged theft to the authorities or publicized that the Hamilton Letter was stolen; and, more troubling, did nothing of substance to recover the supposedly stolen Hamilton Letter for over 70 years. The only reference the Archives ever made regarding the Hamilton Letter was a report to a website in the 2000s, claiming that it was "missing."

Surely, the evidence the Hamilton Letter was ever stolen from the Archives is seriously in question, and, thus, is not a basis for Plaintiff's Verified Complaint, instead, it violates the doctrine of laches. Further, Massachusetts law permits the abandonment and/or destruction of public documents, and Plaintiff has not demonstrated that the Hamilton Letter was not subject to such a process. Only when the Estate sought to sell the Hamilton Letter after Stewart passed away do we now see the Archives, supported by Plaintiff, conjecturing that the Hamilton Letter

2

was stolen despite the documentary evidence to the contrary, to deny the Hamilton Letter from the Crane family despite not caring about it for over 7 decades.

These situations were the reason Congress explicitly created the innocent owner defense as an exemption from the civil forfeiture regime. *See* 18 U.S.C. § 983(d). The government may not automatically seize someone's property through civil forfeiture when that property had been obtained by a bona fide purchaser for value. By statutory definition, an innocent owner is someone who would not have known the Hamilton Letter would be subject to forfeiture since the property was neither contraband nor illegal to possess. R.E. was the quintessential bona fide purchaser for value. The Hamilton Letter also is indisputably not some form of contraband or "illegal to possess" as argued by the Plaintiff. As such, if this Court were to accept Plaintiff's overbroad argument, it would read out of existence the statutory safe harbor especially enacted to protect parties such as the Estate in these types of matters.

Finally, in a diversionary tactic to avoid the dismissal of its Verified Complaint, Plaintiff, who knew and has known about the ownership by the Crane family of the Hamilton Letter from the inception of this matter, argues that the Estate is out of time because the initial pleadings indicated R.E.'s estate as opposed to the Claimant. Such a procedural maneuver has no basis in law and fact especially since the reason R.E.'s estate appeared in the initial pleadings is that Plaintiff served process on that entity, and not the Estate.

Accordingly, for the foregoing reasons, Plaintiff's Verified Complaint should be dismissed with prejudice, and its Motion to Strike should be denied in its entirety since Plaintiff has not met its burden.

Active\105865397.v2-12/19/19

## II. FACTUAL BACKGROUND

A.     **The History of the Hamilton Letter.**

The parties to this matter agree as to the origin and historical significance of the Hamilton Letter.  The Hamilton Letter is a rare document since very few items from Alexander Hamilton's military service still exist today.  *See* Verified Complaint, Exhibit ("Ex.") A (Docket No. 1).  The Archives claims to have once possessed the Hamilton Letter.  *See* Verified Claim of the Commonwealth of Massachusetts, dated August 23, 2019 ("Archives Claim"), ¶ 6.

However, it is beyond dispute that R.E. had purchased the Hamilton Letter for value in or about 1945.  *See* Claimant's Answers To Plaintiff's Special Interrogatories, dated September 27, 2019 ("Special Interrogatory"), Nos. 3 and 5.  In response, the Archives, for the first time in this action, makes the claim it was stolen.  Archives Claim ¶ 6.  There is no dispute that the Archives never reported it to the authorities or publicized the Hamilton Letter as allegedly stolen.  Plaintiff only musters 2 references to the Hamilton Letter in the over 70 years the Crane family owned it: (1) in the 1961 edition of The Papers of Alexander Hamilton, Vol. II: 1779-1781, where it is stated that the original Hamilton Letter was "missing" (Verified Complaint, Ex. A); and another "missing" reference found at the website Founders Online, a resource created by the National Archives.  *See* Archives Claim ¶ 7 and Ex. 8.

Other than these 2 third-party references to something "missing" and made many years after R.E. had purchased the Hamilton Letter, there is no indication, nor has it been alleged by either the Plaintiff or the Archives, to anything ever having been done to publicly declare the Hamilton's Letter's alleged disappearance or report it to the authorities.

4

B.     **The Archives Misdirection as to the Provenance of the Hamilton Letter.**

The parties agree that the Archives never previously claimed the Hamilton Letter was stolen, and that the Archives did nothing to recover the supposed stolen Hamilton Letter.  *See* Archives Claim, generally.

Now, for the purposes of this litigation, the Archives claims the Hamilton Letter was taken by an Archives' employee, who was caught in the 1950s.  *See* Archives Claim, ¶ 8. Plaintiff tries to piggyback on this crime where certain letters were sent to various police departments by the Massachusetts attorney general listing dozens of documents stolen from the Archives, but never mentioning the Hamilton Letter as being stolen.  *See* Archives Claim, ¶ 8 and Exs. 9-10.  Plaintiff had to know that these letters and reports made no mention of the Hamilton Letter.  *Id.*

In one article from the now-defunct, *The Boston Post*, Plaintiff cites, it lists just 43 "priceless historical documents which were stolen and for which the nationwide search has been launched."  *See* Archives Claim, Ex. 10.  Additionally, in the attorney general letter, he calls the over 40 documents, "priceless historical documents" and the "more important and valuable documents which are missing."  *See* Archives Claim, Ex. 10.   Obviously, the Hamilton Letter was not stolen since it was not listed.  *Id.*  Another report accompanying this article is a quote from a well-regarded historical document dealer at the time where he states that the "theft shows that the custodians of the Massachusetts archives certainly have been careless."  *See* Archives Claim, Ex. 10.[1]

---

[1] Interestingly, Plaintiff makes no mention if the alleged perpetrator actually was convicted of a crime.  In another article written by Stanley Eames, shortly after this alleged theft, he states the former archives person may not even serve any time in prison because the alleged thefts occurred outside of the statute of limitations for the prosecution.  *See* Archives Claim, Ex. 10.  Ironically, the Commonwealth could not prosecute the alleged thief of these other historical documents, but

C.      **The Crane Family Ownership of the Hamilton Letter.**

Since the Hamilton Letter was never reported as stolen by the Archives, no member of the public had any knowledge that the Hamilton Letter could not be sold.

Thus, in or about 1945, R.E. purchased the Hamilton Letter from John Heise Autographs, an establishment owned by Elmer V. Heise, a reputable dealer in rare books and documents. *See* Special Interrogatory Nos. 3 and 5. R.E. was a captain of industry, and the co-founder of the Eljer Plumbing Company as well as a collector of historical documents. Special Interrogatory No. 3.

Plaintiff falsely alleges that there is no evidence of R.E.'s purchase. However, that assertion is wholly inaccurate since Plaintiff was provided with a post-marked envelope from John Heise Autographs (Elmer V. Heise), an envelope that has consistently been maintained with the Hamilton Letter by the Crane family. *See* Special Interrogatory No. 5. The Hamilton Letter was delivered to R.E. at his business address in Ford City, Pennsylvania, and, along with the Hamilton Letter, R.E., subsequently, moved his residence to Florida where he passed away. *See* Special Interrogatory Nos. 5 and 7.

The Hamilton Letter was transferred to his last surviving son, Robert F. Crane, Sr. ("Robert, Sr."). *See* Special Interrogatory No. 3. Like his father, Robert, Sr. maintained his residence in Florida. *See* Special Interrogatory No. 5. In turn, Robert, Sr. transferred the Hamilton Letter along with a number of other significant historical documents to Stewart and his brother, Robert F. Crane, Jr. ("Robert, Jr.") in the early 1980s that Robert Jr. recalled. *See*

---

Plaintiff now claims the Hamilton Letter is somehow connected to this alleged theft and is illegal to possess.

Special Interrogatory No. 3 and the Declaration of Robert F. Crane, Jr., dated September 12, 2019, attached to Special Interrogatory No. 3.

Stewart lived in Florida, Texas, Georgia, and passed away as a resident of South Carolina, but he consistently maintained possession of the Hamilton Letter following his father's gift to him. *See* Special Interrogatory No. 5. Stewart passed away on December 21, 2018, and his Estate was submitted to probate. *See* Special Interrogatory, No. 1. Boss is a Personal Representative for the Estate as set forth in the Last Will and Testament of Stewart R. Crane, dated March 16, 2004 (as amended by that certain First Codicil to Last Will and Testament of Stewart R. Crane dated May 31, 2016, collectively, the "Will") and as confirmed by the South Carolina Probate Court. *See* Special Interrogatory No. 1. Further, a copy of the Certificate of Appointment and final estate inventory on file with the probate court, demonstrates Stewart's ownership of the Hamilton Letter. *See* Special Interrogatory No. 1. The Estate remains open pending disposition of these proceedings.

In sum, Claimant's ownership interest of the Hamilton Letter derives from R.E.'s status as a bona-fide purchaser for value, with the Estate being the current owner/successor to R.E.'s ownership interest. *See* Special Interrogatory No. 3. Given it is the Estate's obligations to ensure the passage of lawful title to Stewart's heirs, the Estate has instituted this Claim.

D.     **The Crane Family Seeks to Sell the Hamilton Letter.**

In November 2018, Stewart contracted with The Potomack Company ("Potomack") for the sale of the Hamilton Letter and other historical documents. *See* Special Interrogatory No. 3. On December 19, 2018, the United States District Court for the Eastern District of Virginia issued a Warrant of Seizure, and, pursuant to the Warrant, the Hamilton Letter was seized that same day. The contract for consignment clearly indicates the Estate was the source of the Hamilton Letter. *See* Special Interrogatory No. 8, and a copy of Potomack's Auction

7

Consignment Agreement, dated November 2, 2018 ("Agreement").  Interestingly, no other item

subject to Potomack's Agreement was reported to the Estate as stolen.  Finally, Plaintiff only

provided notice to R.E.'s estate, and not the Claimant.  *See* Warrant and Monition [sic], filed

May 15, 2019.

## III.  ARGUMENT

A.  **Motion to Dismiss Standard.**

Pursuant to Rule G(8)(b)(i) of the Supplemental Admiralty and Maritime Claims Rules,

Forfeiture Actions in Rem ("Supplemental Rule") and Federal Rule of Civil Procedure ("FRCP")

12(b), this Court has the authority to dismiss Plaintiff's Verified Complaint.

Supplemental Rule G(8)(b)(i) provides that: "[a] claimant who establishes standing to

contest forfeiture may move to dismiss the action under [Federal Rule of Civil Procedure]

12(b)."  FRCP 12(b) requires this Court to accept the factual allegations of a plaintiff's complaint

as true and draw reasonable inferences in favor of plaintiff.  *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007); *U.S. v. U.S. Currency $81,000.00 et al*., 189 F.3d 28, 33 (1ˢᵗ Cir. 1999);

*U.S. v. Eleven (11) New Utility Vehicles*, 2014 WL 4385734, *1 (D. Puerto Rico September 4,

2004).  However, "the tenet that a court must accept as true all of the allegations contained in the

complaint is inapplicable to legal conclusions."  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.*  (citing *Trombly*, 550 U.S. at 555).  Finally, this

Court may consider documentary evidence referenced in the complaint.  *See Prisma Zona

Exploratoria de P.R. v. Calderón,* 310 F.3d 1, 2 (1ˢᵗ Cir. 2002).

As detailed below, the Verified Complaint and attendant Motion to Strike are, essentially,

balanced on a "house of cards," removing any individual component will cause the entire

structure to collapse.  Since much of Plaintiff's case relies on conclusory statements of both law

8

and fact, Plaintiff has not met its burden, and the Verified Complaint must be dismissed and the Motion to Strike denied.

**B.      Claimant Has Demonstrated that it Has Standing.**

Claimant has standing to assert its claim to the Hamilton Letter because it owned it and its injury will be rectified if it prevails in this action.  Plaintiff conclusory argues in opposition that: (1) Massachusetts law applies because the Hamilton Letter is allegedly a "public record;" (2) the Estate cannot own stolen property and the Hamilton Letter is, therefore, "illegal to possess," and (3) the Estate's claim is untimely.  For the reasons stated below, none of these arguments has any merit, and the Estate has standing pursuant to Supplemental Rule G and 18 U.S.C. §983.

**1.      Claimant Met Both the Statutory and Constitutional Standing Tests.**

Although the parties agree that standing is the first consideration in civil forfeiture cases for either a motion to strike or dismiss, the Estate has met its standing burden.  *See United States v. One–Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003).  The First Circuit stated in the *One–Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233* case, that standing has both statutory and constitutional components.  *See One-Sixth Share Of James J. Bulger*, 326 F.3d at 40-41.  A party must first demonstrate an ownership or possessory interest in the seized property to pass the first test of standing.  *Id*. at 41.

Additionally, a party must also pass constitutional muster showing "a concrete and particularized injury, a causal connection between that injury and the wrongdoer's conduct, and the likelihood that prevailing in the action will rectify the injury in some way." *United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (citing *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 317 (1st Cir. 2012)).  As the court in *$8,440,190.00 in U.S. Currency* recognized, the

9

standing requirement is "not arduous," and "any colorable claim on the defendant property suffices." *Id.*; *United States v. U.S. Currency, $81,000*, 189 F.3d 28, 35 (1st Cir.1999) (court considered standing at the motion to dismiss stage); *United States v. One Parcel of Real Prop. with Bldgs., Appurtenances & Improvements Known as 116 Emerson St.*, 942 F.2d 74, 78–79 (1st Cir.1991). The First Circuit has only required a mere ownership allegation along with evidence of ownership "sufficient to establish constitutional standing to contest a forfeiture." *Id.*; *U.S. Currency, $81,000*, 189 F.3d at 35.

The Estate has clearly documented its claim of ownership, and provided a detailed chronology of the Hamilton Letter's purchase and retention by the Crane family. In particular, the Estate provided an envelope showing the source of the Hamilton Letter as well as family history indicating, who in and when the Crane family possessed the Hamilton Letter. Plaintiff does not dispute this provenance, only conclusory stating the Archives owns it, and the Estate may not own "stolen property," thus, making it illegal to possess, as well as arguing that the Claim was untimely (without acknowledging its own errors in the service of notice). For the reasons stated below, these arguments are not applicable to the Estate's Claim, and, accordingly, the Estate has demonstrated an ownership or possessory interest in the Hamilton Letter.

2. **Plaintiff Misapplies Massachusetts and Federal Law to the Hamilton Letter.**

Plaintiff incorrectly and conclusory pronounces that there is no controversy relating to the application of Massachusetts law to this matter. Nothing could be further from the truth. The Hamilton Letter was purchased from a New York antiquities dealer by a Pennsylvania resident, who received the Hamilton Letter there, and, ultimately, it was seized in Virginia with many stops along the way.

10

Although the parties agree that state law governs the ownership interest definition in federal civil forfeiture proceedings, it is not clear that Massachusetts law should apply. *One-Sixth Share Of James J. Bulger*, 326 F.3d at 45; *U.S. Currency, $81,000*, 189 F.3d at 33. The Plaintiff only cites as support for its argument 2 cases where there was never any question as to application of the particularized state law, that is, *U.S. Currency, $81,000*, *supra*, and *U.S. v. One Lincoln Navigator* 1998, 328 F.3d 1001, 1003. Neither case stands for the proposition Massachusetts law applies in this case, but both cases merely acknowledge that the underlying facts all occurred in either Massachusetts or Arkansas, respectively. *See U.S. Currency, $81,000*, 189 F.3d at 33; and *One Lincoln Navigator* 1998, 328 F.3d at 1013. This Court's determination is, however, dependent upon where the interest arose. *Id.*

Since Plaintiff has not demonstrated that the interest arose in Massachusetts, its law cannot apply, and this Court cannot simply make a determination on a Motion to Strike the choice of one's state's law over another especially with the underlying facts being in dispute. The facts alleged to date all demonstrate that this case arose outside of Massachusetts since the transaction whereby R.E. purchased the Hamilton Letter occurred either in New York or Pennsylvania. In employing circular reasoning, Plaintiff attempts to tie this case to Massachusetts law with its broad reading of the definition of "public record," and its contortionist approach to wedging the Hamilton Letter into that expansive definition. Both attempts fail, and, as such, it is not "obvious" Massachusetts law applies.

Therefore, Plaintiff has not met its burden to strike the Estate's claim.

3.      **The Hamilton Letter is Not a Public Record.**

Plaintiff also makes the startling assumption that the Hamilton Letter is a "public record" without any discussion of a "public record" definition, let alone any proof that it is. Plaintiff's

sole support is that the Hamilton Letter was allegedly part of the Archives. Plaintiff cites no law to suggest that the Hamilton Letter was, in fact, a public record, only that it is axiomatic since the Archives allegedly possessed it at one time, maybe.

Pursuant to Massachusetts law, public records may be, among other things, "books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics… ." *See* Mass. Gen. L., c. 4, § 7, cl. 26. This statute does not support Plaintiff's interpretation that the Hamilton Letter, a document discussing a Revolutionary War campaign in Rhode Island, was ever a public record of the Commonwealth. If this Court were to accept the Plaintiff's rationale, it would mean nearly everything in the hands of the Commonwealth or a subsidiary agency would have to be construed as a public record.

No federal or Massachusetts court has approved this overly broad interpretation of a public record. The First Circuit's decision in *Freeman v. Town of Hudson,* 714 F.3d 29, 36 (1st Cir. 2013), is instructive. The court in addressing the type of expansive interpretation of a "public record," now, proffered by Plaintiff in the context of a motion to dismiss states: "[b]ut there are limits to that license. Many documents in the possession of public agencies simply lack any indicia of reliability whatsoever. In that regard, they are unlike official records, such as birth or death certificates and other similar records of vital statistics." *Id.* Thus, Plaintiff's expansive and conclusory definition of a "public record" appears to have been rejected by the First Circuit.

Even the cases cited by Plaintiff do not appear to support its assertion that the Hamilton Letter is a public record. For example, in *State of North Carolina v. West*, 235 S.E.2d 150, 157-58 (N.C. 1977), the records were 2 criminal indictments. There can be no dispute that court records are, in fact, public records. *See Freeman v. Town of Hudson,* 714 F.3d at 36-37.

12

Similarly, in *United States v. N. Carolina's Original Copy of the Bill of Rights*, 2004 WL 3609349, \*1 (E.D.N.C. Feb. 19, 2004), *vacated and remanded sub nom. In re Matthews*, 395 F.3d 477 (4ᵗʰ Cir. 2005), the court specifically commentated the copy of the Bill of Rights "has been the property of the State of North Carolina from the time when George Washington sent the *original copies of the proposed amendments to the Constitution of the United States in 1789… .*" *Id.* This is an important distinction from the case at bar because, unlike any purported possession of the Hamilton Letter, the transmittal of proposed constitutional amendments to the various states is a defined process that the federal government must engage in to obtain the consent of the states to any amendment. *See U.S. Constitution*, Art. 5; 1 U.S. Code § 106b (submission of the proposed amendment to the governor of each state for its consideration).[2]

Apparently recognizing the weakness in its bold definitional foray, Plaintiff argues that Mass. Gen. L., c. 66, § 8, provides the definitive basis for claiming that "only the Commonwealth can own a public record" allegedly such as the Hamilton Letter. *See* Memorandum of Law in Support of the United States' Motion to Strike the Claim of Claimant Aldrich L. Boss as Personal Representative for the Estate of Stewart R. Crane, dated November 5, 2019 ("Plaintiff's Memorandum"), p. 9. Putting aside for the moment the concerns raised above, a close reading of this statute simply does not establish that *only* the Commonwealth may own a "public record." *See* Plaintiff's Memorandum, p. 11. The statute actually discusses the preservation *and destruction of various public records*, not ownership:

> Section 8. Every original paper belonging to the files of the commonwealth or of any county, city or town, bearing date earlier than the year eighteen hundred and seventy, every book of registry or record, except books which the supervisor of public records determines may be destroyed, every town warrant, every deed to the commonwealth or to any

---

[2] Other states do address the ownership of public records, but the other states cited by Plaintiff, unlike Massachusetts, actually, state ownership.

county, city or town, every report of an agent, officer or committee relative to bridges, public ways, sewers or other state, county or municipal interests not required to be recorded in a book and not so recorded, shall be preserved and safely kept; and every other paper belonging to such files shall be kept for seven years after the latest original entry therein or thereon, unless otherwise provided by law or unless such records are included in disposal schedules approved by the records conservation board for state records or by the supervisor of public records for county, city, or town records . . .

This statute demonstrates that the Commonwealth allows the abandonment of many of the documents it considers part of its "public records," and Plaintiff presents no evidence that the Hamilton Letter was not one of those documents so abandoned.[3]

Essentially, Plaintiff is attempting to create a public record where none exists. Plaintiff's Memorandum and accompanying papers are replete with references to the Hamilton Letter being a part of the Archives' "Collection," and not part of its public records' files. *See* Plaintiff's Memorandum, pp. 4-5. Thus, despite the bravado of Plaintiff's Motion to Strike, it is far from clear that the Hamilton Letter is a public record; accordingly, the Plaintiff has not met its required burden, and the Motion to Strike must be denied.

4.    **A Bona Fide Purchaser May Possess the Hamilton Letter.**

Since, at the very least, it is not clear the Hamilton Letter is a "public record," the Plaintiff next argues that the Hamilton Letter was somehow "stolen" although it presents no evidence to support its contention. The fact actually is the Hamilton Letter was in the public

---

[3] We note that various states destroy or even sell their public records. *See, e.g.,* John Hageman, "History on sale: North Dakota State Archives offering books, newspapers and records," *The Jamestown Sun* (June 26, 2019) ("The State archives will hold a sale Thursday and Friday at the Heritage Center in Bismarck to rid itself of duplicate items and things that aren't relevant to the state or region but have found its way into its collection … Among the treasures are more than 4,000 audio records known as 78s, books, atlases, posters and sheet music. Some items date back to the 1800s.")

Active\105865397.v2-12/19/19

realm and sold to a bona fide purchaser. Plaintiff tries to undermine the bona fide purchaser doctrine, conclusory claiming that a bona fide purchaser may never retain title to an alleged stolen item (and that it is also illegal to possess pursuant to 18 U.S.C. §983).

As detailed above, R.E. purchased the Hamilton Letter from Mr. Heise in Syracuse, New York, as evidenced by the envelope maintained with the Hamilton Letter. Further, the Hamilton Letter has been, indisputably, possessed by 3 generations of the Crane family. Additionally, Plaintiff has submitted no evidence that the any member of the Crane family, who possessed the Hamilton Letter, had any knowledge of the Archives' claims the Hamilton Letter was allegedly stolen. To the contrary, although the Estate, initially, relied upon the representations of Plaintiff's counsel that the Hamilton Letter was stolen, a close examination of the evidence submitted by Plaintiff in support of its Motion to Strike only leads to the conclusion that there is no support that the Hamilton Letter was stolen.

However, the record before this Court is replete with references provided by Plaintiff that the Archives was lax in its management of the documents under its control, and has no way of ascertaining with any certainty if the Hamilton Letter was abandoned by the Archives. Further, during the relevant period, the only known theft from the Archives did not include the Hamilton Letter. Plaintiff also acknowledges that there exists a procedure for the disposition and destruction of the Commonwealth's public records. *See* Mass. Gen. L., c. 66, § 8. However, Plaintiff offers no proof that the Hamilton Letter was not disposed of under these procedures or that the Archives simply did not abandon it.

Plaintiff also ignores the Estate's bona fide purchaser status by claiming that a bona fide purchaser may not possess a "stolen item." That claim is wholly suspect. Massachusetts courts have found that a bona fide purchaser "has been liberally construed to include 'all persons who

give value ... in an arms'-length transaction with the expectation that they would receive equivalent value in return'." *See U.S. v. 198 Training Field Road*, 2004 WL 1305875, *2 (D. Mass. June 14, 2004) (*quoting United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987). Massachusetts law also requires that a person have actual notice of some inappropriate action to affect title before the bona fide purchaser may be challenged. *See Richardson v. Lee Realty Corp.*, 307 N.E.2d 570, 573 (Mass. 1974).

In the instant case, R.E. met all the elements of a bona fide purchaser. He did not know of any concerns regarding title to the Hamilton Letter and made his purchase in good faith. The Archives never reported or claimed the Hamilton Letter was stolen until this case, 7 decades after R.E. purchased the Hamilton Letter from Mr. Heise.[4] As a result, the Estate has met its burden that it is a bona fide purchaser, having no knowledge of any illegitimacy relating to the Hamilton Letter, and, thus, it is not illegal for the Estate to possess the Hamilton Letter.

Moreover, despite the claims of the Plaintiff to the contrary, not all property claimed to have been stolen is automatically returned to its alleged rightful owner. Some courts have taken a more balanced approach. The Supreme Court of the State of New Jersey in *O'Keeffe v. Snyder*, 83 N.J. 478, 499 (N.J. 1980), is instructive. In *O'Keefe*, the court indicated that, where a bona fide purchaser bought artwork from an art dealer in the ordinary course of business, it should be able to acquire good title against the true owner. *Id.* In an action for replevin, the original artist sought to obtain the return of certain alleged stolen paintings, but there was no dispute that the artist never reported the paintings missing or instituted an action until 30 years after the paintings

---

[4] A person who inherits property from a bona fide purchaser has the right to step into the shoes of the original bona fide purchaser for purposes of forfeiture. *See* 18 U.S.C. §983(d)(3)(B)(IV) (declaring that the transfer of property through an inheritance will not extinguish the beneficiary from consideration or compensation under the civil forfeiture statute).

were allegedly stolen.  *Id.* at 484.  In the meantime, the paintings had been consigned to an art dealer, who, in turn, sold them to another art dealer.  *Id.* at 486  The artist then sued the ultimate buyer, but the court opined that "entrusting possession of goods to a merchant who deals in that kind of goods gives the merchant the power to transfer all the rights of the entruster to a buyer in the ordinary course of business." *Id.* at 499.

Here, the document dealer was reputable, and there was no indication the Hamilton Letter was ever stolen.  Thus, Plaintiff has not satisfied its heavy burden that good title could not pass to a bona fide purchaser, or by explaining the delay in making such a claim.  Accordingly, its Motion to Strike must be denied because it has not proven the letter was the product of a theft.

5.    **The Hamilton Letter was Not Illegal to Possess.**

A demonstrated above, the Estate is the owner of the document.  Plaintiff has not established that the Estate could not own or possess the Hamilton Letter.

Section 983 of Title 18 defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest."  18 U.S.C. § 983(d)(6)(A).  Plaintiff claims that the Estate possesses "contraband or other property that it is illegal to possess."  18 U.S.C. § 983(d)(4).  The Hamilton Letter simply does not fall under 18 U.S.C. Section 983(d)(4)'s ban on claims to property that are illegal to possess because, as described above, the Hamilton Letter is neither a public record or that the Estate is not a bona fide purchaser.  Although 18 U.S.C. § 983(d)(4) does not require that the property to be per se illegal to possess or subject a person to criminal penalties, the cases cited by Plaintiff involve other circumstances that are not present in the case at bar.  In fact, the cases cited, *United States v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131, 1135 (9th Cir. 2005); *United States v. 1866.75 Bd. Feet & 11*

17

*Doors & Casings, More or Less, of Dipteryx Panamensis Imported from Nicaragua*, 587 F.

Supp. 2d 740, 751 (E.D. Va. 2008), *aff'd sub nom. United States v. Thompson*, 332 F. App'x 882

(4th Cir. 2009); and *United States v. Approximately 236 Firearms and 11,376 Rounds of*

*Ammunition*, 2014 WL 12575724, *4 (S.D. Iowa Apr. 28, 2014); *United States v. $75,000 in*

*U.S. Currency*, 97 F. Supp. 3d 1, 3 (D.P.R. 2015); 381 F. Supp. 2d 57, 62 (D.P.R. 2005), either

involved the illegal importation of certain goods deemed to be contraband or where the claimant

was actually lawfully precluded from possessing said goods.  None of those situations exist with

the Estate and its lawful possession of the Hamilton Letter.

The Estate may, thus, be an owner of the Hamilton Letter since it is not illegal to possess

given the failure of proof by Plaintiff.

   6.  **Plaintiff Did Not Provide Proper Notice to the Estate.**

Without citing any case law to support its position, Plaintiff now seeks to argue that the

Estate's claim is not timely despite Plaintiff failing to provide proper notice to the Estate.

Plaintiff provided notice to R.E.'s estate and not the Estate.  The First Circuit has held that the

filing of an answer may be treated as a claim and the deadline extended for filing.  *See U.S. v.*

*One Urban Lot Located at 1 Street A-1, Valaparaiso, Bayamon, Puerto Rico*, 885 F.2d 994, 999

(1st Cir. 1989).  Here, given the Plaintiff's failure to provide proper notice and the Estate filing a

Notice of Claim as well as a Verified answer, Plaintiff has suffered no prejudice whatsoever.

Accordingly, the Estate is the proper claimant, and has standing to assert its claim in this matter.

**C.  The Estate is Permitted to Rely upon the Innocent Owner Defense.**

The Estate has demonstrated that it is an innocent owner.  Pursuant to the 18 U.S. C.

§983(a)(4)(A), after the government institutes a civil forfeiture action, a person may file a claim

regarding an interest in seized property, and, pursuant to 18 U.S.C. § 983(a)(4)(B), a person may

18

file an answer to the government's complaint, and name various affirmative and separate defenses, including, but not limited to, the "innocent owner defense." See 18 U.S.C. §983(d).

The innocent owner defense provides that: "[a]n innocent owner's interest in property shall not be forfeited under any civil statue, the claimant shall have the burden of proving that the claimant is an innocent owner by a ponderous of the evidence." *Id.* The statute defines innocent owner as: "[w]ith respect to a property interest acquired after the conduct giving rise to forfeiture took place, the term 'innocent owner' means a person who at the time that person acquired the interest in the property - - (i) was a bona fide purchaser or seller for value . . . , and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." *Id.* at 18 U.S.C §983(d)(3).

As detailed above, the Estate is a bona fide purchaser and had no knowledge there were any title issues regarding the Hamilton Letter. *See 198 Training Field Road*, 2004 WL 1305875, *2. R.E. met all the elements of a bona fide purchaser, and did not know of the conduct giving rise to the forfeiture when he purchased the Hamilton Letter in good faith. Plaintiff has not demonstrated that the Hamilton Letter is either a public record, was stolen, or was illegal to possess in any manner. R.E.'s status as an "innocent owner" is beyond question, and the Estate succeeds to this status pursuant to 18 U.S.C. §983(d)(3)(B) and the shelter provisions for holders in due course pursuant to Mass. G. L. c 106, Section 3-203(b). *See* The House Report 106-192 on Civil Asset Forfeiture Reform (983(d)(3)(B) intended for parties who gave no value but received assets by gift from a party who was an innocent owner). Accordingly, the Estate has a lawful right to the Hamilton Letter, and its Motion to Dismiss should be granted.[5]

---

[5] This Court may also award cash compensation, pursuant to 18 U.S.C. §983, if it were to determine the Hamilton Letter should not be returned to the Estate.

19

D.    **Plaintiff's Verified Complaint is Barred by Laches.**

The Plaintiff and Archives waited over 7 decades before doing anything to recover what it believed to be a stolen document (although they have provided no evidence that the Hamilton Letter was stolen).  This delay where the Archives undertook no effort to publicize or retrieve what it allegedly thought was stolen cannot inure to its benefit, and such a result would be inequitable due to the doctrine of laches.  *See Shell Oil Company v. Hennessy*, 639 F. Supp. 626, 629 (D. Mass. 1986).  As a result, the Estate's Motion to Dismiss should be granted, and any recovery by the Plaintiff should be barred based on the doctrine of laches.

## III.  REQUEST FOR ORAL ARGUMENT

The Estate hereby requests oral argument on both Motions.

## IV.  CONCLUSION

For the foregoing reasons, Claimant respectfully requests that the Court grant its Cross-Motion to Dismiss the Verified Complaint and deny the Motion to Strike the claim of Claimant.

Respectfully submitted,

ALDRICH L. BOSS and
ESTATE OF STEWART R. CRANE

By: /s/ Ernest Edward Badway
        Ernest Edward Badway, B.B.O. #562641
        Fox Rothschild LLP
        101 Park Avenue, Suite 1700
        New York, NY 10178
        (212) 878-7986
        ebadway@foxrothschold.com

Dated: December 19, 2019

Active\105865397.v2-12/19/19

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, was filed through the Electronic Case Filing

system and will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


/s/ Ernest Edward Badway
ERNEST EDWARD BADWAY

Dated: December 19, 2019